PEOPLE ex rel. A. G. HYDE & SONS v. MILLER, Comptroller.

(Supreme Court, Appellate Division, Third Department. January 6, 1904.)

1. TAXATION—CORPORATION—FRANCHISE TAX—REDUCTION FOR INDEBTEDNESS.
    In assessing the property of a corporation, to determine the basis of its franchise tax, there should be deducted from its total assets its assets outside the state, and such a proportion of its indebtedness only as its assets in the state bear to its total assets.

Certiorari by the people, on the relation of A. G. Hyde & Sons, against Nathan L. Miller, state comptroller, to review his readjustment of an account for franchise tax assessed on the relator. Determination of the Comptroller confirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Decker, Allen & Chatfield (James J. Allen, of counsel), for relator.
John Cunneen, Atty. Gen. (William H. Wood, of counsel), for respondent.

SMITH, J. This controversy presents a single question. This corporation had assets amounting to $1,503,342, of which $868,043

were in New York, and $635,299 were outside the state of New York. Its liabilities amounted to $784,610.80. The Comptroller, upon adjustment, reduced the tax to $472.79, which amount was reached by assessing the tax upon the assets within this state, reduced only by the proportion of the liabilities of the relator as would be represented by the amount of assets in this state as compared with the total assets. The relator claims that from the gross assets should be first deducted the assets without the state, next the total liabilities, and upon the balance only, which in this case would amount to $83,433, should the tax be computed.

In People ex rel. Wiebusch v. Roberts, 19 App. Div. 574, 46 N. Y. Supp. 570, this court, under a similar statute, laid down the rule contended for by the relator here. In 154 N. Y., at page 101, 47 N. E. 980, is the report of this case in the Court of Appeals, where it was affirmed. In that case, Judge Martin, in writing for the court, at page 106, 154 N. Y., page 982, 47 N. E., says:

"The record discloses the gross assets of the relator, its liabilities, and the amount of its exemptions. Therefore, if the cash value of the capital stock is to be measured by the net assets of the corporation after deducting its liabilities and the amount of its capital that is exempt, then, clearly, the decision of the court below was correct."

A reference to the facts of this case as shown in the report thereof in the Appellate Division discloses that the exemptions referred to by Judge Martin were the assets of the company without the state of New York. In this case, however, of the gross assets in this state and out of the state, amounting to $305,445, only $18,102 were without the state. The questions discussed in that case were, first, whether assets amounting to $30,000, consisting of unbroken packages imported from other states, could be the subject of taxation; and, secondly, whether the amount of assets should be reduced by the liabilities of the corporation. The question does not seem to have been raised as to whether those liabilities should be apportioned between the assets within the state and out of the state. In that case the assets out of the state were so small that the question was practically an immaterial one. For these reasons, I do not deem these authorities as controlling upon the issue here presented. The relator also relies upon the case of People ex rel. Thurber-Whyland Co. v. Barker, 141 N. Y. 118, 35 N. E. 1073, 23 L. R. A. 95. In that case the relator, a foreign corporation, was taxed upon moneys invested in the state of New York. It was there held that no part of the indebtedness of the company was to be deducted from the assets in the state of New York. This case is somewhat limited by the decision in People ex rel. Milling Co. v. Barker, 147 N. Y. 31, 41 N. E. 435, 29 L. R. A. 393. It is claimed by the relator that if, under our statute, is to be deducted from the assets in this state only a proportion of the indebtedness of the corporation, we cannot with good grace refuse to deduct from the assets of a foreign corporation found in this state a part of the indebtedness of such corporation proportioned to the aggregate assets of such corporation. In the case cited it was pointed out that the statute required the mode of taxa-

tion, viz., the same as if they were residents of this state. Judge Peckham, in writing for the court in that case, says:

"The resident has no right to deduct his indebtedness from any specific piece of personal property or from any special chose in action. In a general way, it may be said that he is to be charged with all his personal property, and from that total he may deduct his debts. This cannot be done in the case of a nonresident, although it may, as we assume, be done at his domicile. All we are to do is to assess and tax the sum here invested, and the equities must, as we have said, be adjusted at the domicile of the person."

If, therefore, under this opinion, the domestic corporation were assessed for all of its assets in this state, equity would demand the deduction of all of the indebtedness. Whereas, however, the assessment is for only such part of the assets as are employed within this state, there are, I think, no equities to be adjusted which require the deduction of more than a proportionate amount of the indebtedness.

Not only does this adjustment seem equitable, but otherwise many domestic corporations would wholly escape taxation within this state for the "right to live" which is given by the state, and which is the basis of this tax. Large corporate business can hardly be done without the employment of extensive credit, and with considerable property in other states, as many domestic corporations have, the portion of assets within this state might easily and often be overbalanced by the indebtedness. We are of opinion, therefore, that the Comptroller rightfully interpreted the law as requiring a reduction from the value of the assets in this state only of such proportionate amount of the liabilities of the corporation as is represented by the ratio of the capital stock employed within this state to the entire capital of the corporation.

The determination of the Comptroller should therefore be confirmed, with $50 costs and disbursements. All concur.